# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LMP B&B HOLDINGS, LLC,<br>　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| TONY L. HANNAN,<br>MICHELE G. HANNAN,<br>B&B WORLDWIDE HOLDINGS, LLC,<br>and BRUNSWICK SQUARE, LLC,<br>　　　　Defendants. | NO.  19-385 |

DuBois, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　September 13, 2019

## M E M O R A N D U M

### I.　　INTRODUCTION

　　　This case is a contractual dispute that arises out of the sale of the Burger & Beer franchise system from Tony Hannan, Michele Hannan, B&B Worldwide Holdings, LLC ("B&B Worldwide"), and Brunswick Square LLC (collectively "defendants") to LMP B&B Holdings, LLC ("plaintiff").  Presently before the Court is Defendants' Motion to Dismiss Complaint or, in the Alternative, to Transfer.  For the reasons set forth below, the Court denies the motion.

### II.　　BACKGROUND

　　　On January 29, 2016, plaintiff and defendants executed a Membership Interest Purchase and Sale Agreement ("Purchase Agreement") for the rights to license, franchise, and operate restaurants using the "B&B Burger & Beer Joint" brand.  Compl. ¶ 16.  Under the Purchase Agreement, plaintiff acquired a 90 percent interest in the B&B Franchise Group, LLC ("the Company"), an entity that licenses the B&B business concept to franchisees.  *Id.*; Pl. Resp. Def. Mot. Dismiss at 2.  Separately, plaintiff signed a Promissory Note committing to pay defendant B&B Worldwide an additional two million dollars.  Compl. ¶ 18.  Together, the Purchase

Agreement and the Promissory Note ("Transaction Documents") governed the terms of the sale.

Eight months after executing the Transaction Documents, the Company, now controlled by plaintiff, received a demand letter dated September 29, 2016 from its largest franchisees ("FDG Franchisees") claiming losses from alleged misrepresentations, fraud, and various deceptive practices committed by the Company and Mr. Hannan. *Id.* ¶ 31. Plaintiff promptly notified defendants of the FDG Franchisees' allegations and demanded indemnification from defendants under the terms of the Purchase Agreement. *Id.* ¶ 44. Defendants B&B Worldwide and Mr. Hannan agreed to assume the defense of plaintiffs for some of the claims by FDG Franchisees, but defendants refused to fully indemnify plaintiff. *Id.* ¶ 47. The FDG Franchisee lawsuit progressed, and on January 13, 2017, plaintiff sent another letter demanding complete indemnification. *Id.* ¶ 48. Defendants refused. *Id.* ¶ 51.

The FDG Franchisee suit was eventually settled in December 2018. *Id.* ¶ 53. On January 2, 2019, plaintiff again demanded indemnification from defendants. Pl. Resp. Def. Mot. Dismiss, Ex. 1. At that time, plaintiff advised defendants that if a compromise was not reached by January 15, 2019 it would file a lawsuit against defendants to recover damages covering the costs from the FDG Franchisee action and a return of the purchase price. *Id.* One day before plaintiff's January 15 deadline, defendants filed a complaint in Florida state court alleging (1) anticipatory repudiation of the Promissory Note and (2) breach of the Purchase Agreement; defendants also requested (3) declaratory relief regarding the indemnification provision of the Purchase Agreement ("the Florida Action"). Def. Mot. Dismiss, Ex. A; *B&B Worldwide Holdings, LLC et al v. B&B Franchise Group, LLC et al*, No. 2019-001206-CA-01 (Fla. Cir. Ct. filed Jan. 14, 2019). A motion to dismiss filed on August 12, 2019 is pending in the Florida Action.

On January 25, 2019, eleven days after defendants filed the Florida Action, plaintiff filed the present civil action in federal court, exclusively alleging breach of the Purchase Agreement ("the Pennsylvania Action"). Compl. ¶¶ 58–94. Plaintiff alleges that the claims by FDG Franchisees show that defendants made false representations and warranties in their sale of the Company to plaintiff and that defendants were unjustly enriched as a result. Compl. ¶ 43. In addition, plaintiff contends that it is entitled to indemnification under the Purchase Agreement for the cost of the subsequent lawsuit brought by FDG Franchisees against the Company. *Id.* ¶ 60–65.

On April 1, 2019, defendants filed their Motion to Dismiss Complaint or, in the Alternative, to Transfer (Document No. 12), based on (1) the "first-filed" rule and (2) convenience of the parties. The issue presented in this motion arises in part because the Transaction Documents have conflicting forum selection provisions. The Purchase Agreement requires that all actions "arising out of or relating to this Agreement" be heard in a Montgomery County, Pennsylvania state court or the Eastern District of Pennsylvania. Purchase Agreement § 8.4(b) ("the Pennsylvania forum selection provision").[1] The Promissory Note requires that all actions arising under the Note be filed in Miami-Dade County, Florida. Promissory Note ¶ 8 ("the Florida forum selection provision").[2] In addition, both the Purchase Agreement and Promissory Note contain choice of law clauses that provide for Delaware law. Purchase

---

[1] Section 8.4(b) of the Purchase Agreement, in relevant part, provides:
> Each of the parties irrevocably and unconditionally waives, to the fullest extent it or he may legally and effectively do so, any objection (whether as a matter of state or federal law) that it or he may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any Pennsylvania State court in Montgomery County, Pennsylvania or Federal court sitting in the Eastern District of Pennsylvania. Each of the parties irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

[2] Paragraph 8 of the Promissory Note provides, *inter alia*, that the parties "each irrevocably agree, consent and submit to the exclusive jurisdiction and venue of the courts located in Miami-Dade County, Florida for any actions arising under, or for enforcement of, this Note, and hereby waive any claim of lack of venue or of *forum non conveniens*."

Agreement § 8.4(a); Promissory Note ¶ 8.  On April 26, 2019, plaintiff filed a response to defendants' motion (Document No. 17).  Defendants' motion is thus ripe for decision.

### III. APPLICABLE LAW

#### A. The "First-Filed Rule" vs. *Colorado River* Abstention

Defendants ask this Court to dismiss the Pennsylvania Action because the Florida Action was filed first.  They argue, *inter alia*, that rather than litigate in Pennsylvania, plaintiffs should have brought their claims as compulsory counterclaims in the Florida Action.  Defendants cite the so-called "first-filed rule," which provides that "'[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  A district court applying the first-filed rule "then faces the discretionary choice whether to stay the second-filed action, transfer it, dismiss it *without* prejudice, or dismiss it *with* prejudice." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 216 (3d Cir. 2016).  Although the first-filed rule explicitly refers to concurrent pending *federal* cases, defendants contend that the rule can also apply in situations where "one of the two competing courts is a state court." Def. Mot. Dismiss at 4.  Some courts have applied the first-filed rule in this context, but the Third Circuit has not endorsed this approach. *Compare Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (applying the first-filed rule), with *Unitrin Auto & Home Ins. Co. v. Clayton Corp. of Delaware*, No. 1:15-CV-02079, 2016 WL 8199315, at *4 (M.D. Pa. Apr. 20, 2016) (refusing to apply the first-filed rule to parallel pending state and federal cases until the Third Circuit clarifies otherwise).[3]

---

[3] The Court acknowledges that at least one district court in this circuit, in an unpublished opinion, has applied the first-filed rule in the context of ongoing parallel state and federal cases.  *See Cain Specialty Ins. Co v. Plato Const. Corp.*, Civil No. 10-5722, 2012 WL 924850 (D.N.J. 2012).  However, in justifying the use of the first-filed rule, the District of New Jersey court heavily cited *Colorado River Water Conservation District v. United States*, 424 U.S.

4

The Court declines to apply the first-filed rule in this case and instead applies the doctrine set out by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and refined in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). In *Colorado River*, the Court noted that generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colo. River*, 424 U.S. at 817 (internal quotation marks omitted). However, under certain "exceptional circumstances" a stay or dismissal by the federal court in the face of a concurrent and related state case is permitted on the grounds of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted). These circumstances are rare given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id. See also Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.").

Numerous federal courts have applied *Colorado River* under circumstances nearly identical to those presented in this case, where defendants argued for dismissal in part on the ground that plaintiffs could have brought their federal claims as counterclaims in a related pending state court action that was filed first. *See, e.g.*, *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003); *Allied Nut and Bolt, Inc. v. NSS Industries, Inc.*, 920 F. Supp. 626 (E.D. Pa. 1996). Accordingly, this Court applies the *Colorado River* standard.

---

800 (1976), the case in which the Supreme Court articulated a separate standard for dismissal in instances of concurrent pending federal and state court litigation.

## B. Dismissal or Transfer for Convenience

Defendants also argue for dismissal, or alternatively, transfer to the Southern District of Florida, on the ground that litigating this dispute in Florida would be more convenient than in Pennsylvania. In evaluating arguments regarding convenience, the Court applies the common law doctrine of forum non conveniens and the standard for transfer of venue under 28 U.S.C. § 1404(a).[4] "[F]orum non conveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad' . . . and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citation omitted). The Supreme Court has held that forum non conveniens applies in the "set of cases calling for a nonfederal forum" and that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60–61 (2013). Nevertheless, when the preferred alternative forum is a state court, federal district courts most often opt to transfer to a more convenient federal district court under 28 U.S.C §§ 1404, 1406. *Jaffe & Hough, P.C. v. Baine*, No. CIV.A. 09-3000, 2010 WL 844748, at *4 n.43 (E.D. Pa. Mar. 10, 2010).

In reviewing a motion to dismiss on the basis of forum non conveniens, the Court examines the convenience to the parties, the convenience to the witnesses, and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The moving party bears the "heavy burden" of establishing that these considerations outweigh the strong preference for

---

[4] The Court notes that defendants in their briefing appear to conflate the doctrine of forum non conveniens and the standard for transfer of venue between federal district courts under § 1404(a). While related, the two legal concepts are "quite different," both with respect to the context in which they apply and the legal remedies that they provide. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955) (quoting *All States Freight v. Modarelli*, 196 F.2d 1010, 1011 (3d Cir. 1952)). *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (noting that § 1404(a) "was intended to be a revision rather than a codification of the common law"). For this reason, the Court treats each doctrine separately when ruling on defendants' motion.

plaintiff's choice of forum and favor dismissal. *Sinochem Int'l.*, 549 U.S. at 430; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). The Third Circuit has held:

> A district court may, in the exercise of its sound discretion, dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish…oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988) (quoting *Piper*, 454 U.S. at 241).

Courts specifically consider four factors in deciding a motion to dismiss based on forum non conveniens: (1) the availability of an adequate alternative forum where defendants are amenable to process and plaintiff's claims are cognizable; (2) the amount of deference to be afforded to plaintiff's choice of forum; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors affecting the convenience of the forum.[5] *Kisano Trade & Invest. Ltd. v. Lemster*, 737 F. 3d 869, 873 (3d Cir. 2013).

In the context of litigation in federal court, forum non conveniens has largely been replaced by transfer under § 1404(a). *See* 14D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3828 (4th ed. 2019). Section 1404(a) provides that a federal district court may transfer a case when three conditions are met: (1) the civil action could have been properly brought initially in the proposed transferee federal court; (2) transfer will be more convenient for both the parties and the witnesses; and (3) the transfer will be in the "interest of

---

[5] "[P]rivate interests include such things as ease of access to sources of proof, ability to compel witness attendance, and other potential obstacles to a cost-effective and expeditious trial." *Kisano*, 737 F.3d at 877. Public interest factors include the following:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

7

justice." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Much like a court considering dismissal under forum non conveniens, a court considering transfer under § 1404(a) must evaluate "all relevant factors," including "the private and public interests protected by the language of § 1404(a)."[6] *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3847 (2d ed. 1986)); *see Atl. Marine.*, 571 U.S. at 61.

Ultimately, the party moving to transfer bears the burden to demonstrate that transfer is appropriate, *Jumara*, 55 F.3d at 879–80, and "unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted); *see also Jumara*, 55 F.3d at 879 (noting that the plaintiff's choice of venue "should not be lightly disturbed"). Unlike forum non conveniens, transfer is the only remedy under § 1404(a).

## IV. DISCUSSION

Dismissal is inappropriate under both *Colorado River* and the doctrine of forum nonconviens. Transfer to the Southern District of Florida is inappropriate under § 1404(a).

### A. Abstention Under the *Colorado River* Doctrine

The analysis under *Colorado River* consists of two steps. First, the Court determines whether parallel state and federal proceedings are underway. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). In the context of *Colorado River* abstention, "cases are parallel when they

---

[6] The private and public interest factors weighed in the balancing test under § 1404(a) are very similar to those under the forum non conveniens framework. Private interest factors include plaintiff's forum preference as manifested in the original choice; defendants' preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. *Jumara*, 55 F.3d. at 879. Public interest factors include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80.

8

involve the same parties and claims." *Id.* Parallel proceedings are those at are "truly duplicative" and involve parties and claims that are "identical" or at least "effectively the same." *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223–24 (3d Cir. 1994), *superseded by statute on other grounds as recognized in Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011). Second, the Court evaluates the six factors set out in *Colorado River* and *Moses H. Cone* to determine if "exceptional circumstances" warrant abstention. *Ryan*, 115 F.3d at 196.

The Florida Action and Pennsylvania Action are parallel proceedings. The cases raise the same legal issues arising from the same written agreements and involve nearly identical parties. (Defendant Brunswick Square LLC is the only party in this case not named in both the Florida Action and Pennsylvania Action.) Defendants suggest that because plaintiff could have brought its claims as compulsory counterclaims in the Florida Action, the Pennsylvania Action is duplicative of the Florida Action. In the context of *Colorado River*, federal court claims that could have been brought as counterclaims in a prior-filed state court action are considered parallel. *See Allied Nut and Bolt*, 920 F. Supp. at 630.

The issue of whether plaintiff's Pennsylvania Action claims should have been brought as compulsory counterclaims in the Florida Action is a question of state law. *See, e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 531 (E.D. Pa. 2010), *order amended on reconsideration*, No. Civ. A. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011). Florida Rule of Civil Procedure 1.170(a) is modeled on Federal Rule of Civil Procedure 13(a). Because the claims in the Florida Action are based on both the Promissory Note and Purchase Agreement and plaintiff's claims in the Pennsylvania Action are based exclusively on the Purchase Agreement, both sets of claims clearly arise from the same transaction or occurrence. The Pennsylvania Action could be brought as a compulsory counterclaim in the Florida Action,

and the two cases are parallel proceedings.

The Court next determines if "exceptional circumstances" justify dismissal or a stay for wise judicial administration. Following *Colorado River* and *Moses H. Cone*, the Third Circuit specifically weighs the following six factors: "(1) [in an *in rem* action,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City Corp. v. American Bldgs. Co.* 193 F.3d 165, 171 (3d Cir. 1999) (internal quotation marks omitted).

In balancing the six factors, "[n]o one factor is necessarily determinative," and "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colo. River*, 424 U.S. at 818–19. The Supreme Court has stated that the "task . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist . . . the 'clearest of justifications' . . . to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25–26. Simply put, the analysis is "heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16.

In this case, none of the six factors weigh in favor of abstention.

### 1. *Which court first assumed jurisdiction over property*

This first factor is irrelevant because plaintiff has not brought an *in rem* action.

### 2. *The inconvenience of the federal forum*

The second factor does not favor abstention because the parties have agreed that litigating in the Eastern District of Pennsylvania is no less convenient than litigating elsewhere. *See*

Purchase Agreement § 8.4(b). Importantly, defendants do not argue that the Pennsylvania forum selection provision is invalid. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (explaining that forum selection clauses are presumed valid unless a party shows that enforcement would be "'unreasonable' under the circumstances"). The Third Circuit has held that, in the context of the *Colorado River* analysis, a party subject to a valid forum selection clause waives arguments that the forum is inconvenient. *See Ingersoll-Rand Financial Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988).

### 3. *The desirability of avoiding piecemeal litigation*

The third factor does not weigh in favor of abstention. The avoidance of piecemeal litigation factor is "[b]y far the most important factor" in the *Colorado River* balancing test, *Moses H. Cone*, 460 U.S. at 16, but abstention "must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City Corp.*, 193 F.3d at 172. However, this factor is satisfied only "when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan*, 115 F.3d at 197–98. "The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Id.* at 198. There is no such policy for contractual claims such as the ones between plaintiff and defendants in this case. *See, e.g.*, *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 00-CV-3683, 2000 WL 1780231, at *6 (E.D. Pa. Dec. 4, 2000) (finding that parallel state and federal actions for, *inter alia*, breach of contract, do not implicate a federal policy against piecemeal litigation).

In another case involving parallel contractual disputes in state and federal court, Judge Shapiro denied a motion to stay under *Colorado River* even though plaintiffs could have brought their federal court claims as counterclaims in the first-filed state court action. *See Se. Pa.*

*Transp. Auth. v. Am. Coastal Indus., Inc.*, 682 F. Supp. 285, 286–88 (E.D. Pa. 1988). As Judge Shapiro noted, "[w]hile there is the possibility . . . of duplication of effort or inefficient use of judicial resources, that is an inevitable consequence of parallel federal and state judicial systems and may be a necessary price we pay for the benefits of 'our federalism.'" *Id.* at 288. Such duplication is appropriate in this case as well.

*4. The order in which jurisdiction was obtained*

The fourth factor does not favor abstention. In determining whether the state or federal case takes priority, the Court must consider how far each case has progressed in the litigation process. *See Moses H. Cone*, 460 U.S. at 21–22; *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton*, 571 F.3d 299, 309 (3d Cir. 2009). Although the Florida Action was filed first, it preceded the Pennsylvania Action by only 11 days. Moreover, in both the Florida Action and Pennsylvania Action, motions to dismiss are pending and discovery has not yet begun. For practical purposes, the two lawsuits are at the same stage. *See Se. Pa. Transp. Auth.*, 682 F. Supp. at 287 (finding that there "had not been a substantial allocation of state judicial resources" when the state court action was filed only six weeks before the federal court action).

Moreover, the chronology of events that led to the filing of this case gives the Court pause. The Supreme Court has stated in dicta that "the vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Moses H. Cone*, 460 U.S. at 18 n.20. As noted, after receiving multiple demand letters from plaintiff, defendants filed the Florida Action only one day before plaintiff's final demand deadline, alleging, *inter alia*, plaintiff's breach of the Purchase Agreement and Promissory Note. In light of plaintiff's ongoing efforts to negotiate a compromise, such precise timing suggests that the Florida Action was a pre-emptive attack designed to make an end-run

around the Pennsylvania forum selection provision. *See Se. Pa. Transp. Auth.*, 682 F. Supp. at 287 (stating that, in refusing to abstain under *Colorado River*, "the court would not reward a 'race to the courthouse'"); *cf. Allied Nut and Bolt*, 920 F. Supp. at 632. Although not dispositive, the anticipatory nature of the Florida Action further weighs against abstention.

### 5. *Whether federal or state law controls*

The fifth factor does not weigh in favor of abstention. As a preliminary matter, federal courts and state courts are equally competent to apply the settled law of the state in which the state court sits. *See Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743, 747 (3d Cir. 1982). This factor is only implicated when the "state-law issues raised . . . are particularly complex or unsettled." *Cottman Transmission Sys., Inc. v. Lehwald, Inc.*, 774 F. Supp. 919, 923 (E.D. Pa. 1991); *see also Ryan*, 115 F.3d at 200. Plaintiff's claims—which relate to breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment—do not raise any novel or particularly complicated state law issues. Importantly, Delaware state law, not Florida state law, is applicable to the case. Purchase Agreement § 8.4(a); Promissory Note ¶ 8. A Florida state court is no more capable of applying Delaware state law than a Pennsylvania federal court.

### 6. *Whether the state court will adequately protect the interests of the parties*

Finally, the sixth factor does not favor abstention. "[T]he mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction." *Ryan*, 115 F.3d at 200. "Instead, this factor is normally relevant only when the state forum is *in*adequate." *Id.* If present, this factor can only favor the *exercise* of federal jurisdiction, not abstention. In this case, neither party has argued that the Florida state forum is inadequate to protect their interests. For

this reason, "the factor carries little weight." *Id.*

In sum, the balance of the factors weighs against abstention. *See CFI of Wisconsin, Inc. v. Wilfran Agricultural Industries, Inc.* No. CIV. A. 99-1322, 1999 WL 994021, at *4 (E.D. Pa. Nov. 2, 1999) (noting that although "the conventional factors are variously inapplicable, neutral, or militate slightly in favor of abstention . . . this is not a sufficient basis to forego an exercise of jurisdiction"). The Court thus declines to abstain in this case.

### B. Dismissal Under Forum Non Conveniens and Transfer Under § 1404(a)

The Court also denies defendants' motion to dismiss or, in the alternative, to transfer on the basis of convenience. A valid forum selection clause "represents the parties' agreement as to the most proper forum," and therefore substantially affects the Court's calculus under both the forum non conveniens and § 1404(a) inquiries. *Atl. Marine*, 571 U.S. at 62–63 (internal quotation marks omitted). For dismissal under forum non conveniens, "the existence of a valid and enforceable forum selection clause is an especially significant consideration." *Fuller co. v. RDM Tech. BV*, No. CIV A 99-CV-1684, 1999 WL 961217, at *4 (E.D. Pa. Oct. 15, 1999). Similarly, in balancing the private and public interest factors encompassed by § 1404(a), "a valid forum-selection clause is given controlling weight in all but the most exceptional cases." *Stewart Org.*, 487 U.S. at 33 (Kennedy, J., concurring).

However, when a court determines that a forum selection clause does not apply, the clause carries little weight in the balancing tests. *See, e.g.*, *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018) ("[A] court need not transfer an action based on a forum-selection clause if the clause is invalid (*i.e.*, an enforceability challenge) or if it does not cover the action or claims that the defendant is seeking to transfer (*i.e.*, a scope challenge)."). Although the parties agree that the Pennsylvania forum selection provision is valid, they dispute

14

the significance of the conflict between the forum selection clauses of the two Transaction Documents. Plaintiff argues that because its Pennsylvania Action claims arise exclusively under the Purchase Agreement, there is no conflict and the Pennsylvania forum selection provision should be given full weight when considering the public and private interest factors. Defendants contend that, because the Purchase Agreement and Promissory Note are closely related, they should be read together, thus creating a conflict between the forum selection clauses. Due to this seeming conflict, defendants argue that the Court should decline to enforce both provisions and ignore the Pennsylvania forum selection provision when evaluating the question of convenience under forum non conveniens and § 1404(a).

Plaintiff is correct on this point: there is no conflict and the Pennsylvania forum selection provision of the Purchase Agreement governs this dispute. In many cases where courts refused to enforce conflicting forum selection clauses, plaintiffs brought claims simultaneously under *multiple* contracts. *See, e.g.*, *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.* 978 F.2d 463, 468 (E.D. Pa. 2013) ("Federal courts construing conflicting forum selection clauses governing separate claims raised in a *single action* often decline to enforce both clauses out of concern for wasting judicial and party resources.") (internal quotation marks omitted) (emphasis added); *Eastcott v. McGraw-Hill Global Educ. Holdings, LLC*, No. CV 16-904, 2016 WL 3959076, at *1–3 (E.D. Pa. July 22, 2016). But in this case, plaintiff deliberately brought its claims under only one contract, the Purchase Agreement. The fact that there is related litigation in Florida state court that involves a forum selection clause in a separate contract on distinct subject matter is immaterial.

The Pennsylvania forum selection provision alters the analysis under both forum non conveniens and § 1404(a) in a way that militates strongly against dismissal or transfer. Under

*Atlantic Marine*, when determining a motion to transfer or dismiss for forum non conveniens in a case with a valid and applicable forum selection clause, courts should not weigh plaintiff's choice of forum or the parties' private interest in convenience, because the parties have already privately agreed to a forum. *Atl. Marine*, 571 U.S. at 64 (modifying the analysis under § 1404(a)); *Collins On Behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (extending the *Atlantic Marine* modification to the forum non conveniens framework).

In the context of forum non conveniens, *Atlantic Marine* leaves only two factors for the Court to consider: (1) the availability of an adequate alternative forum and (2) the relevant public interests. *Collins*, 874 F.3d at 186. These factors "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (citing *Atl. Marine*, 571 U.S. at 64). Defendants have not addressed either of these factors in their briefing, instead only discussing the reasons why litigating this case in Florida state court would serve the private interests of the parties. For this reason, the Court denies the motion to dismiss on the basis of convenience.

For similar reasons, the Court denies the motion to transfer to the Southern District of Florida under § 1404(a). Given the Pennsylvania forum selection provision, the Court only considers (1) whether the Pennsylvania Action could have been brought initially in the Southern District of Florida and (2) whether the proposed transfer would serve the public interest. A movant faced with such a provision must satisfy both factors in order to justify transfer under § 1404(a). *See Atl. Marine*, 571 U.S. at 58, 64. Plaintiffs argue, *inter alia*, that the Pennsylvania forum selection provision rendered other venues for plaintiff's claims improper, and that, for this reason, the Court need not engage in the balancing of interests required by § 1404(a). The Court rejects this argument because, as the Supreme Court has held, "a contractual bar cannot render

16

venue in [a particular district] 'wrong.'" *Atl. Marine*, 571 U.S. at 58.  However, absent any public interest factors strongly favoring the Southern District of Florida, the availability of another proper venue alone is insufficient to justify transfer.  Because defendants—who are attempting to overcome a valid forum selection clause—fail to identify any reasons that transfer would be in the public interest, the Court denies the motion to transfer.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Complaint or, in the Alternative, to Transfer is denied.  An appropriate order follows.